**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CRIMINAL NO. MJM-22-00060** |
| **KACEY BROOKS,** | |
| **Defendant.** | |

**THE GOVERNMENT'S OPPOSITION
TO THE DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Erek L. Barron
United States Attorney

Keelan F. Diana
Special Assistant United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
Tel.: (410) 209-4800
Fax: (410) 962-3124
Keelan.Diana@usdoj.gov

Dated:   September 27, 2024

1

## INTRODUCTION

The United States of America, by and through its undersigned counsel, respectfully submits this Opposition to the Defendant's Motion to Dismiss Indictment, and states as follows:

On February 17, 2022, the Defendant, Kacey Brooks ("Mr. Brooks" or the "Defendant"), was indicted for violating 21 U.S.C. § 846, 21 U.S.C. § 841, and 18 U.S.C. § 922(g)(1) by conspiring with a co-defendant, Willie Small, to sell cocaine base, a Smith & Wesson revolver, and thirty-six rounds of CCI .22 caliber ammunition to a Confidential Informant ("CI") working with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").   *See* ECF No. 23.   Mr. Brooks has moved to dismiss the Indictment on the ground that his rights under the Speedy Trial Act have been violated.   For the reasons discussed below, the Court should dismiss the Indictment without prejudice.

## FACTUAL BACKGROUND

A.   Mr. Brooks Was Indicted for Selling Cocaine to an ATF Confidential Informant During a Video-Recorded Controlled Purchase.

In January 2020, ATF began investigating a suspected drug trafficking organization ("DTO") operating in Northwest Baltimore, Maryland.   As part of that investigation, an ATF CI made seven controlled purchases of cocaine, fentanyl, and firearms from DTO member and co-defendant Willie Small between January 2, 2020, and January 19, 2022.   All of these controlled purchases were audio- and video-recorded via a covert camera worn by the CI.   At the time of the controlled purchases, the CI had been a signed informant for ATF since June 2015 and had assisted reliably and consistently in multiple federal investigations targeting violent DTOs, including by conducting other controlled purchases of narcotics and firearms.   Mr. Brooks came to the attention of investigators in late 2021 through his association with Mr. Small, who was already a target of

1

the investigation.

On Wednesday, January 19, 2022, at approximately 1:35 p.m., ATF arranged another audio- and video-recorded controlled purchase between the CI and Mr. Small. The CI planned to purchase a firearm and an "eight-ball" of cocaine base, or crack cocaine, from Mr. Small. Mr. Small told the CI that someone else would be supplying the firearm. After liaising with agents on January 19 and walking toward the location where he planned to meet Mr. Small—a liquor store located at 4416 Park Heights Avenue—the CI spotted and approached Mr. Small, who exited a vehicle carrying a red backpack. The CI followed Mr. Small into the liquor store, where the CI purchased a Smith & Wesson Model 617 .22LR revolver bearing serial number CDH1077 from Mr. Small, along with thirty-six rounds of ammunition. The firearm was in its original box. The CI and Mr. Small discussed the price and quantity of the cocaine, and as the CI waited inside the liquor store, he watched as Mr. Small returned to the vehicle to gather the cocaine. But it was Mr. Brooks who exited the vehicle wearing a bright yellow down coat and carrying the same red backpack that Mr. Small had been carrying when he sold the revolver to the CI. Mr. Small, who was standing by the vehicle, shouted toward the CI: "Tell him to give it to you right there!" The CI turned around and Mr. Brooks was standing in front of him, just inside the front entrance to the liquor store. The CI then purchased approximately 3.4 grams of cocaine from Mr. Brooks, and Mr. Brooks departed from the rear of the liquor store carrying the red backpack. Surveillance footage of this series of events showed Mr. Brooks arriving to the scene before the CI to meet Mr. Small while wearing the same yellow coat and carrying the red backpack that investigators believed contained the revolver.

Mr. Brooks is prohibited from owning, using, or possessing firearms and ammunition

because of felony convictions for, among other things, possession with intent to distribute controlled substances and illegal possession of firearms.   He received a two-year suspended sentence for possession with intent to distribute controlled substances on July 15, 2013; a five-year sentence with three years suspended and three years of probation on August 25, 2014; and a two-year suspended sentence with one year of probation on January 14, 2021.[1]

     B. Procedural History.

On February 9, 2022, Mr. Brooks and Mr. Small were charged via criminal Complaint with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846; distribution of cocaine and fentanyl in violation of 21 U.S.C. § 841; and illegal possession of firearms and ammunition in violation of 18 U.S.C. §922(g)(1).   *See* ECF No. 1.   On February 17, 2022, a Grand Jury for the District of Maryland returned an eleven-count Indictment against Mr. Small and Mr. Brooks.   ECF No. 23.   Mr. Brooks was charged under Count One with conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. § 846; under Count Ten with distribution of cocaine base in violation of 21 U.S.C. § 841; and under Count Eleven with possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. §922(g)(1).

On February 9, 2022, ATF executed a search and seizure warrant at Mr. Brooks' residence, but agents learned that Mr. Brooks had moved out shortly before they arrived.   Mr. Brooks could not be located during the pendency of his co-defendant's criminal case.   The United States Marshals Service eventually located Mr. Brooks in Norfolk, Virginia, where he appeared to be

---

1 *See* Case No. 03K130021451, Circuit Court of Maryland for Baltimore City (July 15, 2013); Case No. 03K14001996, Circuit Court of Maryland for Baltimore City (Aug. 25, 2014); and Case No. C-03-CR-20-000961, Circuit Court of Maryland for Baltimore County (Jan. 14, 2021).

living and working after leaving Baltimore.   Because Mr. Brooks was considered a fugitive, this case remained partially sealed until April 24, 2023, after Mr. Brooks had his Initial Appearance in the Eastern District of Virginia.   ECF Nos. 58-60, 62.   The Eastern District of Virginia ordered Mr. Brooks to appear in the District of Maryland on May 5, 2023, for an Initial Appearance.   Mr. Brooks was released with conditions, including that he restrict his travel to the Eastern District of Virginia and the District of Maryland unless otherwise approved.   ECF No. 65.

The law firm Zuckerman Spaeder LLP was appointed to represent Mr. Brooks.   On August 24, 2023, Gregg Bernstein and Samantha Kavanagh entered appearances on behalf of Mr. Brooks.   ECF Nos. 63, 67-68.   On June 30, 2023; July 27, 2023; and May 22, 2024, the Government provided counsel for the Defendant with requested discovery.

On January 8, 2024, following a request from this Court, the Government filed a Status Report that was approved on January 9, 2024.   ECF Nos. 70-71.   On February 20, 2024, the Government filed a Motion to Exclude Time Pursuant to the Speedy Trial Act.   ECF No. 72. On February 26, 2024, Mr. Brooks responded in opposition to the Government's Motion.   ECF No. 73.   On March 11, 2024, following a request from this Court, Mr. Brooks filed a Status Report.   ECF No. 74.   A telephonic status conference was held on May 20, 2024, in which the Court and the Parties discussed the Government's pending Motion to Exclude and the Parties' positions with respect to a trial schedule and the possibility of a plea agreement.   ECF No. 76. The Government replied in support of its Motion to Exclude on May 28, 2024, and this Court granted in part and denied in part the Government's Motion on May 30, 2024.   ECF Nos. 77, 79. Another telephonic status conference was held on August 20, 2024, during which the Parties and the Court set the present schedule, and on August 21, 2024, after conferring with counsel for Mr.

Brooks, the Government set Mr. Brooks' arraignment for September 6, 2024.   ECF Nos. 81, 82. On September 13, 2024—the deadline for substantive pretrial motions in this case—Mr. Brooks filed the instant Motion to Dismiss.   ECF No. 83.   Mr. Brooks filed no other pretrial motions.

## LEGAL STANDARD

The Speedy Trial Act of 1974 (the "Speedy Trial Act" or "Act"), 18 U.S.C §§ 3161–3174, "generally requires a trial to begin within 70 days" of a criminal defendant's indictment or initial appearance, whichever occurs later, and entitles the defendant to dismissal of the charges—with or without prejudice—if that deadline is not met.   *Zedner v. United States*, 547 U.S. 489, 492 (2006) (citing 18 U.S.C. § 3161(c)(1)); 18 U.S.C. § 3162(a)(2).   "[T]he Act contains a detailed scheme under which certain specified periods of delay are not counted."   *Zedner*, 547 U.S. at 492; 18 U.S.C. § 3161(h).   Some periods of delay are automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness, while other periods of delay "are excludable only if the district court makes certain findings enumerated in the statute."   *Bloate v. United States*, 559 U.S. 196, 203 (2010) (citing 18 U.S.C. § 3161(h)(7)). These other periods of delay are excluded only when the court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

Section 3161(h)(1) of Title 18 enumerates specific excludable proceedings, but the list it provides is not exhaustive.   *See* 18 U.S.C. §3161(h)(1) (excluding from computation "[a]ny period of delay resulting from other proceedings concerning the defendant . . .").   That section has been interpreted to encompass a number of different proceedings and events concerning

defendants.  *See United States v. Hart*, No. 20-4534, 2024 WL 271125, at *4 (4th Cir. Jan. 25, 2024) (quoting and citing *United States v. Keith*, 42 F.3d 234, 237 (4th Cir. 1994), and *United States v. Henry*, 538 F.3d 300, 303–04 (4th Cir. 2008)).  Courts have discretion to exclude time under the Speedy Trial Act when to doing so will serve "the ends of justice."  *Hart*, No. 20-4534, at *4.  Numerous courts have held, for example, that continuances to permit additional time for plea negotiations are proper under Section 3161(h)(7)(A).  *Hart*, No. 20-4534, at *4; *see, e.g.*, *United States v. Fabian*, 798 F. Supp. 2d 647, 673 (D. Md. 2011) ("[A]n 'ends of justice' exclusion is intended to cover any of various circumstances, including where . . . the government and the defendant are engaged in ongoing plea negotiations.") (citations omitted)

In deciding whether to grant such a continuance, a court "shall consider" the factors identified at 18 U.S.C. § 3161(h)(7)(B)(i)–(iv), "among others."  The statutory factors include "[w]hether the failure to grant such a continuance . . .would likely make a continuation of such proceeding impossible, or result in a miscarriage of justice," *id.* § 3161(h)(7)(B)(i); "'whether the case is complex or unusual," *see id.* § 3161(h)(7)(B)(ii); "whether counsel need additional time to prepare effectively, and whether delay is necessary to ensure continuity of counsel.'"  *United States v. Pair,* 515 F. Supp. 3d 400, 405 (E.D. Va. 2021), *aff'd*, 84 F.4th 577 (4th Cir. 2023) (quoting *Henry*, 538 F.3d at 303–04; *see* 18 U.S.C. § 3161(h)(7)(B)(iv)).  If seventy non-excludable days have passed and a defendant's trial has not begun, "the information or indictment shall be dismissed on motion of the defendant."  18 U.S.C. § 3162(a)(2).  The defendant bears the burden of proof, except as to delays caused by the unavailability of the defendant or an essential witness.  *See id.*

If a court finds that a defendant's Speedy Trial Act rights were in fact violated, it should next decide whether to dismiss the indictment with or without prejudice.   18 U.S.C. § 3162(a)(2). The Speedy Trial Act limits the scope of permissible sanctions for violation, which states in pertinent part:

> If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant.   **The defendant shall have the burden of proof** of supporting such motion but the Government shall have the burden of going forward with the evidence in connection with any exclusion of time under subparagraph 3161(h)(3).   **In determining whether to dismiss the case with or without prejudice**, the court shall consider, among others, each of the following factors: **the seriousness of the offense; the facts and circumstances of the case which led to the dismissal;** and the **impact of a reprosecution on the administration of this chapter and on the administration of justice.**

18 U.S.C. § 3162(a)(2) (emphasis added).

The decision whether to dismiss an indictment with or without prejudice under Section 3162(a)(2) is left "to the guided discretion of the district court."   *United States v. Taylor*, 487 U.S. 326, 335 (1988).   As the language of the Speedy Trial Act indicates, a court must consider and make factual findings on the record as to the relevant statutory factors.   *Id.* at 343–44.   While the list of factors provided in Section 3162(a)(2) is not exhaustive, a District Court's decision must be supported by clear application of those factors to the facts of the case.   *Id.* at 337.   Neither remedy—dismissal with or without prejudice—is presumptively mandated by the Speedy Trial Act.   *Id.* at 334–35, 335 n.8.   "[P]rejudice to the defendant" is a factor "relevant for a district court's consideration," although it is not enumerated in the statute and cannot be dispositive.   *Id.* at 334; s*ee also United States v. Thomas*, 305 Fed. App'x 960, 963 (4th Cir. 2009) (*per curiam*).

7

Where the defendant is charged with a serious crime, the delay was minor, the defendant suffered

no prejudice from the delay, and the Government did not actively seek the delay, dismissal should

be without prejudice.   *See United States v. Carreon*, 626 F.2d 528, 533 (7th Cir. 1980).   As with

the decision to dismiss an indictment with or without prejudice, consideration of potential

prejudice to the defendant is a matter reserved to the discretion of the court.   *Taylor*, 487 U.S. at

334–45.

## ARGUMENT

### I.    ANY DISMISSAL SHOULD BE WITHOUT PREJUDICE.

In the event that this Honorable Court finds dismissal appropriate, the Government submits

that any such dismissal should be without prejudice based upon an examination of the factors laid

out in 18 U.S.C. § 3162(a)(2).

### A.   Courts Uniformly Regard Felony Firearm and Drug Charges as Serious.

Turning to the first of the Section 3162(a)(2) factors—the seriousness of the offense—it is

clear that Mr. Brooks' charges are serious.    The serious nature of Mr. Brooks' offenses weighs

heavily in favor of dismissal without prejudice.    The length of the maximum authorized penalties

for Mr. Brooks' charges reflects their seriousness.[2]   *See Baldwin v. New York*, 399 U.S. 66, 68

(1970) (noting that, in deciding whether an offense is serious, "we have found the most relevant

such criteria in the severity of the maximum authorized penalty"); *Eltahir*, 2016 WL 5400420, at

*2; *United States v. Martin*, 425 F. Supp. 3d 640, 643 (S.D.W. Va. 2019) (holding that possession

with intent to distribute methamphetamine, which is "punishable by a maximum term of twenty

---

[2] On June 25, 2022, the maximum penalty for violation of 18 U.S.C. § 922(g)(1) was increased from 10 years to 15 years.   The maximum penalty for violation of 21 U.S.C. §§ 841 and 846 is 20 years.

years or . . . . thirty years," is a serious offense).

The case against Mr. Brooks involves the sale of cocaine and a deadly weapon to an ATF CI.   Courts have uniformly held that possession of a firearm by a convicted felon constitutes a serious offense.   *See United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002) (holding that possession of a firearm by a felon is a serious offense); *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009) ("Being a felon in possession of a firearm is a serious offense"); *United States v. Jones*, 601 F.3d 1247, 1257 (11th Cir. 2010) ("possession of ammunition by a convicted felon and drug user are clearly serious crimes"); *United States v. Munlyn*, 607 F. Supp. 2d 394, 398–99 (E.D.N.Y. 2009) (holding that "possession of a loaded firearm as a convicted felon" is "a serious offense"); *United States v. Eltahir*, No. 1:16-cr-170, 2016 WL 5400420, at *2 (M.D.N.C. Sept. 27, 2016) (holding that possession of a firearm and ammunition by a drug addict is a serious offense).   "[T]he very purpose of the statutes which forbid convicted felons from carrying firearms, 'which [are] predicated on a defendant's failure to be reformed by the criminal justice system and a continuing disrespect for the law, highlights the crime's seriousness.'"   *Munlyn*, 607 F. Supp. 2d at 399 (citing and quoting *United States v. Richardson*, No. CRIM 06–193 RHK/AJB, 2007 WL 421919, at *1 (D. Minn. Feb. 5, 2007) (holding that possession of a firearm by a convicted felon is a serious offense)).

Likewise, felony drug distribution and conspiracy charges are "uniformly regarded as serious."   *United States v. Drain*, No. 96-40042-01-RDR, 1997 WL 309131, at *2 (D. Kan. May 30, 1997) (holding that charges for felony drug possession, carrying a firearm during a drug transaction, and possession of a firearm by a felon "are very serious offenses"); *United States v. Pasquale*, 25 F.3d 948, 953 (10th Cir. 1994) ("felony drug charges are serious offenses"); *United*

*States v. Taylor*, 487 U.S. 326, 338, (1988) ("there is no question that the drug violations with which [respondent] is charged are serious") (internal citation omitted).

Contrary to Mr. Brooks' position, the serious charges against him are not mitigated by his conduct since he was indicted in 2022.   The proper analysis in determining whether an indictment should be dismissed with or without prejudice is not whether a defendant poses a danger to the community, but whether the charged conduct qualifies as serious based in part upon the maximum statutory penalties for that offense.   The circumstances of Mr. Brooks' offenses are relevant to this analysis as well: Mr. Brooks is charged with selling cocaine base to a CI and providing a firearm to his co-conspirator to be sold to the same CI.   Those sales were audio- and video-recorded.   Mr. Brooks then fled the state, presumably in an effort to escape accountability for his crimes.   His conduct since he was apprehended in Virginia is irrelevant.

**B.  Any Speedy Trial Act Violation Was Not Intentionally Dilatory or Undertaken in Bad Faith and Did Not Benefit the Government.**

The second of the Section 3162(a)(2) factors—the facts and circumstances of the case leading to dismissal—weighs in favor of dismissal without prejudice as well.   Where the Government has not been neglectful or acted in bad faith, dismissal without prejudice is warranted. *See United States v. Hinch*, 308 F. Supp. 2d 599, 603 (D. Md. 2004); *United States v. Morety*, 702 F. Supp. 957, 961 (E.D.N.Y. 1988) ("the clear showing that defendant, and not the prosecutor, caused much of the delay, tips the balance heavily in favor of dismissal without prejudice"); *United States v. Thurlow*, 710 F. Supp. 380, 381 (D. Me. 1989) (dismissing the indictment without prejudice because "there has been no indication that the Government has engaged [in] dilatory tactics in order to prejudice the Defendant.").   Furthermore, "[i]n determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that

10

led to the delay." *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005).

In this case, any delay on the part of the Government was not intentionally dilatory, undertaken in bad faith, or conducted with the aim of delaying resolution of Mr. Brooks' case—indeed, the Government has borne no benefit of any kind from it.   Although the Government acknowledges that it bears some responsibility for any delay, the responsibility does not rest solely with the Government.   Defendants also bear responsibility for moving a case forward.   When defendants "wait[] passively" for the Government to act and take no proactive steps to advance the case, they should not be permitted to avail themselves of the argument that the delay falls entirely upon the Government's shoulders.   *United States v. Pasquale*, 25 F.3d 948, 953 (10th Cir. 1994) ("Rather than seek a speedy trial, Mr. Pasquale and his counsel waited passively, making no claim to prompt attention.").   Where "both defendant and prosecution equally share culpability," dismissal without prejudice is appropriate.   *United States v. Martin*, 425 F. Supp. 3d 640, 646 (S.D.W. Va. 2019) (quoting and citing *United States v. Rodriguez*, 824 F. Supp. 657, 661–62 (W.D. Tex. 1993)).   Here, Mr. Brooks constructs a self-serving narrative in which the Government is solely responsible for any period of delay in this case.   Mr. Brooks' version of events omits any accountability for delay borne by him and his counsel, however.   If Mr. Brooks wished for trial dates, for example, he could have requested a trial during the May 20, 2024, status conference with this Court, but he stated that he would prefer not to.   If Mr. Brooks desired an arraignment at a specific date and time, he could have reached out to the Government to detail such a preference—especially since Mr. Brooks is not in custody and is employed in Virginia, requiring him to travel to Baltimore from out of state for any court appearances.   If Mr. Brooks wished to discuss the terms of a plea agreement or move his case more expeditiously toward

resolution, he could have reached out to the Government at any point.

An important part of the 'facts and circumstances' inquiry is whether the Government has engaged in a 'pattern of neglect,' or, in contrast, whether the violation represents an 'isolated unwitting violation.'" *United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993) (quoting *Taylor*, 487 U.S. at 339). Other courts have assessed culpability when applying the second factor. *See Stevenson*, No. 15-1942, at *4 (asking "[D]id it stem from 'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process?"); *Cano-Silva*, 402 F.3d at 1036 ("In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay."); *United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998) ("Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant."); *United States v. Barnes*, 159 F.3d 4, 18 (1st Cir. 1998) ("In fashioning the proper curative, we find dispositive that the crimes charged are grave, that there is no evidence of bad faith conduct on the part of the government, that the record reveals no actual prejudice to the defendant."). There is no evidence that the Government has engaged in a pattern of intentional neglect in Mr. Brooks' case, nor that there was any ill will on the part of the Government toward Mr. Brooks. The Government has borne absolutely no benefit from any period of delay in this case. *See United States v. Stevenson*, 832 F.3d 412, 420–21 (3d Cir. 2016) (court was correct to dismiss without prejudice where "there was no evidence that the Government had acted in bad faith or to gain some tactical advantage.").

As Mr. Brooks notes, the Government reached out about a potential plea agreement on

12

January 8, 2024, and the Court discussed the possibility of a plea agreement with the Parties during a May 20, 2024, status conference.   During this status conference, when queried about whether a trial date should be set in this case, counsel for Mr. Brooks responded that a schedule should *not* be set.   (The Government affirmed that a trial schedule would be appropriate but deferred to Mr. Brooks' decision).   On the date of his September 6, 2024, arraignment, the Government showed a preliminary plea agreement to counsel for Mr. Brooks and discussed its terms with them.   After Mr. Brooks filed the Instant Motion to Dismiss, the Government conveyed a formal plea offer to Mr. Brooks.   Despite several requests, the Government received no counteroffer from Mr. Brooks.

      C.  Permitting Re-Prosecution Would Strengthen the Administration of Justice and Would Not Prejudice the Defendant.

Finally, the Court must consider the impact of dismissal on the administration of the Speedy Trial Act and the administration of justice.   18 U.S.C. § 3162(a)(2).   Denying re-prosecution of the charges against Mr. Brooks by dismissing the Indictment with prejudice would negatively impact the administration of justice because the distribution of controlled substances and the illegal possession of dangerous weapons are drivers of great social, cultural, and political harm, especially in Baltimore City, and dismissal without prejudice amounts to a grave sanction with a deterrent effect.   *See Cano-Silva*, 402 F.3d at 1035 ("dismissal without prejudice still requires re-indictment, may expose the government to statute of limitations difficulties, and generally makes prosecution less likely.").   Dismissal without prejudice advances the goals of the Speedy Trial Act and deters future prosecutorial misconduct.   *See United States v. Reames*, 40 Fed. Appx. 861, No. 01-4967, 2002 WL 1611339, at *1 (4th Cir. July 23, 2002) ("[T]he purpose of deterring prosecutorial misconduct and delay would be little served by barring reprosecution.").

With regard to the prejudice inquiry, a District Court is to consider: (1) whether the

13

defendant's pretrial incarceration was oppressive; (2) the defendant's anxiety and concern; and (3) the possibility that the delay hampered the defendant's ability to prepare his defense. *Doggett v. United States*, 505 U.S. 647, 654 (1992). District Courts have found that one of the central purposes of the Speedy Trial Act is to mitigate the risk of oppressive pretrial incarceration. *See United States v. Grimmond*, 137 F.3d 823 (4th Cir. 1998); *see also Hinch*, 308 F. Supp. 2d at 604 (dismissing indictment without prejudice for violation of the Speedy Trial Act because, *inter alia*, the defendant was not prejudiced as he remained on release during the entire one-year period of the delay).

Here, Mr. Brooks was released subject to conditions following his May 5, 2023, Initial Appearance in the District of Maryland, and according to his Motion to Dismiss has made productive use of that time. *See* ECF No. 83-1 at 2. There has been no oppressive pretrial incarceration in this case. In fact, by fleeing from Maryland to Virginia shortly before ATF executed a search and seizure warrant at his residence, Mr. Brooks all but guaranteed that he would be able to enjoy a life free from the oppression and uncertainty of pretrial incarceration. Mr. Brooks does not claim that any witnesses or evidence have become unavailable during the pendency of this case—another factor to consider when assessing whether a pretrial delay has prejudiced a defendant. *See Hinch*, 308 F. Supp. 2d at 604 (". . . the Defendant conceded that no witnesses or evidence had become unavailable as a result of the delay. There was absolutely no evidence of any prejudice to the Defendant, as he remained on release during the entire one-year period of the delay. Therefore, this factor weighed in the Government's favor."). Mr. Brooks has not claimed that he has suffered any prejudice at all resulting from the alleged Speedy Trial violation beyond the generalized "anxiety and concern of the accused." ECF No. 83-1 at 11.

The posture of this case has not appreciably altered since Mr. Brooks' Initial Appearance in 2023. Beyond an approximately five-day period prior to his Initial Appearance in the Eastern District of Virginia, he has never been incarcerated on these charges.   He has not submitted substantive motions challenging the basis for his prosecution, despite the Court's August 21, 2024, Letter Order requiring pretrial motions to be filed by September 13, 2024.   ECF No. 81.   No evidence has been lost; no witnesses have become absent; and Mr. Brooks' ability to assert a defense has not been damaged by any delay in this case.

Finally, the effect of re-prosecution in this case does not support a dismissal with prejudice. There was no intentional delay on the part of the Government.   By no stretch of the imagination did the Government seek, or obtain, any tactical advantage from any delay.   Rather, the Government's intention has always been to attempt to resolve this case, or, in the absence of an agreed-upon resolution, to proceed to trial.   Accordingly, this is not the kind of case in which the Government's conduct supports dismissal with prejudice.  *See United States v. Jones*, 887 F.2d 492, 495 (4th Cir. 1989) (dismissal without prejudice was appropriate where the government's violation was not the result of bad faith or an attempt to gain a tactical advantage); *United States v. Williams*, 314 F.3d 552, 560–61 (11th Cir. 2002) (dismissal without prejudice was proper where the government believed, even incorrectly, that the Speedy Trial clock was tolled and relied on an invalid waiver signed by the defendant); *United States v. Archer*, 984 F. Supp. 321, 324 (E.D. Pa. 1997) (dismissal without prejudice was proper where there was a lack of willful conduct or bad faith on the part of the prosecution); *United States v. Long*, 858 F. Supp. 601, 604 (N.D. W.Va. 1994) (dismissal without prejudice was proper in the absence of evidence of intentional wrongdoing by the parties).   The Government's desire has always been to resolve Mr. Brooks'

15

case in a manner acceptable to both Parties.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Honorable Court should dismiss the Indictment as to

Kacey Brooks without prejudice, permitting the Government to seek re-prosecution.

Respectfully Submitted,

Erek L. Barron
United States Attorney

By:\_\_\_\_/s/_____
Keelan F. Diana
Special Assistant United States Attorney
United States Attorney's Office
36 S. Charles Street, 4th Floor
Baltimore, MD 21201
Telephone: (410) 209-4800
Email: Keelan.Diana@usdoj.gov

16