IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. MJM-22-60 |
| | * | |
| KACEY BROOKS, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Kacey Brooks is charged in three counts of an Indictment with drug and firearm offenses. Currently pending is Mr. Brooks's Motion to Dismiss for Speedy Trial Act Violation. ECF No. 83. A memorandum in support and several exhibits are attached to the motion. ECF Nos. 83-1, 83-3 through 83-9. The United States (the "Government") filed a response in opposition, ECF No. 84, and Mr. Brooks filed a reply, ECF No. 85. The Court heard oral argument on October 18, 2024. For the reasons stated herein, Mr. Brooks's Motion to Dismiss for Speedy Trial Act Violation will be granted, and the Indictment shall be dismissed with prejudice.

**I.    BACKGROUND**

On February 9, 2022, a Criminal Complaint was filed under seal charging Mr. Brooks with conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a); and felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). ECF No. 1. The affidavit filed in support of the Criminal Complaint describes, among other things, observations law enforcement made of Mr. Brooks and Willie Small on January 19, 2022, using a CCTV camera. ECF No. 3 at 10–12. According to the affidavit, on January 21, 2022, Mr. Brooks provided a

1

firearm and ammunition that was purchased by a confidential informant and that Mr. Brooks gave the same individual a clear plastic bag containing crack cocaine. *Id.*

An Indictment was filed in this case on February 17, 2022, charging Mr. Brooks and Mr. Small in a total of eleven counts. ECF No. 23. Mr. Small pleaded guilty to two counts and has been sentenced. ECF No. 56. Mr. Brooks is charged in three counts with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; distribution of cocaine base, in violation of 21 U.S.C. § 841; and possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). ECF No. 23. The Indictment alleges that Mr. Brooks committed all three offenses "[o]n or about January 19, 2022[.]" *Id.* at 1, 10, 11.

Mr. Brooks was not located and arrested by law enforcement until April 2023. By this time, the prosecution had been assigned to present government counsel, a Special Assistant United States Attorney who had not been involved in the initial investigation of the case. Mr. Brooks made an initial appearance in the U.S. District Court for the Eastern District of Virginia. ECF No. 62. His initial appearance in the U.S. District Court for the District of Maryland occurred on May 5, 2023, and the Court appointed counsel to represent him in this matter. Mr. Brooks was released from custody on conditions of pretrial supervision. ECF No. 65.

The Government produced discovery to Mr. Brooks on June 30, 2023, and July 27, 2023, ECF No. 70, stating that it would "continue to provide additional discovery on a rolling basis," Def. Ex. 1 (ECF No. 83-3). Thereafter, defense counsel made multiple requests for the CCTV footage referenced in the complaint affidavit. Def. Ex. 2 (ECF No. 83-4) at 1–2. On August 21, 2023, government counsel stated that she was "not aware of any CCTV footage in Mr. Brooks'

case" but would "double-check with the case agent and get back to [defense counsel]." *Id.* at 1. According to counsel, there were no further communications between them for several months.

This matter was reassigned to the undersigned district judge on November 15, 2023. At that point, no trial had been scheduled, and no motion had been filed, nor court order entered, to exclude time pursuant to the Speedy Trial Act. By Paperless Order dated January 4, 2024, the Court directed the parties to file a joint status report on or before January 8th. ECF No. 69.[1]

On January 8, 2024, defense counsel in the instant case contacted government counsel regarding the status report that was due to be filed that day. Def. Ex. 3 (ECF No. 83-5) at 3. Through subsequent email correspondence, government counsel provided a "preliminary calculation" of Mr. Brooks's sentencing guidelines range for purposes of plea discussions. *Id.* at 2–3. Counsel for the parties agreed to state in the status report that the Government had produced discovery and anticipated producing further discovery, and that no motions hearing or trial needed to be set. *Id.*

In a status report filed on January 8, 2024, government counsel stated that it "anticipate[d] producing additional discovery to counsel for the defense in the future." ECF No. 70. On behalf of the parties, government counsel requested "additional time to determine whether Mr. Brooks' case [could] be resolved short of trial, including by undertaking plea negotiations[]" before the Court scheduled any hearing or trial. *Id.* The status report further stated that "[t]he Government plan[ned] to file a motion to exclude time from computation under the Speedy Trial Act through

---

[1] Notably, the Court also ordered status reports in two other recently reassigned cases that were prosecuted by the same government counsel of record in the instant case. *See United States v. Donte Brown*, Crim. No. MJM-21-358, ECF No. 54; *United States v. Duron Young*, Crim. No. MJM-23-47, ECF No. 33. The Court's requests for status reports were prompted by having detected a lengthy delay in each of the three cases.

March 9, 2024." *Id.* Finally, the parties proposed filing another status report "on or before March 9, 2024." *Id.* The Court approved the status report on January 9th. ECF No. 71.

Through further email correspondence between the parties, defense counsel pointed out that they had not agreed to request additional time to discuss a resolution short of trial, that "[t]here ha[d] been no plea negotiations to date," and that additional time was not necessary to review the discovery that had been produced. Def. Ex. 3 at 1. Defense counsel also reiterated their request for CCTV footage, asked that any additional discovery be produced "as soon as possible," and stated that defense counsel would be willing to engage in plea discussions once discovery was complete. *Id.*

The Government did not file its motion to exclude time from Speedy Trial Act computations until February 20, 2024. ECF No. 72. In the motion, the Government requested exclusion of the period from July 14, 2023, through March 15, 2024, from time computations under the Speedy Trial Act based on a finding that, pursuant to 18 U.S.C. § 3161(h)(7), the ends of justice served from excluding this period outweighed the best interests of Mr. Brooks and the public in a speedy trial. *Id.* Mr. Brooks filed a response in opposition to the motion, arguing, in relevant part, that the Court could not lawfully grant a retroactive exclusion of time prior to January 8th based on an after-the-fact ends-of-justice balancing under § 3161(h)(7). ECF No. 73. No further report on the status of the case was filed by March 9th, as proposed in the previous status report, *see* ECF No. 70, and the Government did not file a timely reply in support of its motion to exclude time. Defense counsel filed a status report on March 11th, stating that there had been no activity in

the case apart from the Government's filing of its motion to exclude time and Mr. Brooks's filing of his response in opposition. ECF No. 74.

The Court conducted a telephonic status conference with counsel for the parties on May 20, 2024, during which, upon questioning, government counsel requested an opportunity to file an untimely reply. Counsel for Mr. Brooks consented to the Government filing an untimely reply. On the same date, the Court entered a Paperless Order setting a deadline for any reply from the Government and directing the Government to schedule a prompt arraignment for Mr. Brooks. ECF No. 76.

The Government made a third production of discovery on May 22, 2024, which included the CCTV footage that defense counsel had first requested in July 2023 and requested again in January 2024. Def. Ex. 6 (ECF No. 83-8). An evidence audit trail record of the Baltimore Police Department indicates that case-related CCTV footage was downloaded by the U.S. Department of Justice on December 10, 2021; January 9, 2022; and January 27, 2022.  Def. Ex. 5 (ECF No. 83-7). In its discovery cover letter dated May 22nd, the Government stated that it would "continue to provide additional discovery on a rolling basis[,]" Def. Ex. 6 (ECF No. 83-8), indicating that more discovery had yet to be produced.

On May 28, 2024, the Government filed its reply in support of the motion to exclude time ECF No. 77, but it did not schedule an arraignment for Mr. Brooks as directed by the Court.

On May 30, 2024, the Court entered a Memorandum Order granting in part and denying in part the Government's motion to exclude time. ECF No. 79, *United States v. Brooks*, Crim. No. MJM-22-60, 2024 WL 2783907 (D. Md. May 30, 2024). Because more than 70 non-excluded days had passed without a trial and without any report as to the status of the case between Mr. Brooks's initial appearance and the parties' first status report on January 8, 2024, the Court denied exclusion

of the requested period before the date of the status report. *Id.*; *see also United States v. Carey*, 746 F.2d 228, 230 (4th Cir. 1984) (holding post-expiration "nunc pro tunc or retroactive continuances" to be invalid and inconsistent with the Speedy Trial Act); *United States v. Hart*, 91 F.4th 732, 739–40 (4th Cir. 2024) (requiring the court to conduct ends-of-justice balancing contemporaneously with granting a continuance under 18 U.S.C. § 3161(h)(7)). However, the Court granted exclusion of the period from January 8, 2024, to June 27, 2024. ECF No. 79.

On July 11, 2024, counsel for the parties corresponded by email about scheduling an arraignment and filing another motion to exclude time from Speedy Trial Act computations. Def. Ex. 7 (ECF No. 83-9). But the government never filed any second motion to exclude time and, apparently, did not schedule an arraignment at that time.

On August 20, 2024—before another non-excluded 70-day period elapsed—the Court conducted a telephone conference with counsel for the parties for scheduling purposes. In a Letter Order entered on August 21st, the Court set a schedule for pretrial motions and for trial and again instructed that a prompt arraignment be scheduled with the Magistrate Judge on routine criminal duty. ECF No. 81.

Mr. Brooks's arraignment was finally conducted on September 6th. On the date of the arraignment, government counsel showed defense counsel a copy of the plea offer for which she was seeking supervisory approval to offer formally. The formal offer was not made until after Mr. Brooks filed the instant motion to dismiss.

The instant motion to dismiss was filed on September 13, 2024, with several exhibits and a memorandum requesting dismissal of the Indictment with prejudice to reprosecution. ECF Nos. 83, 83-1, and 83-3 through 83-9. The Government filed a timely response in opposition, arguing that any dismissal of the Indictment should be without prejudice. ECF No. 84. Mr. Brooks filed a

timely reply maintaining that dismissal with prejudice is warranted. ECF No. 86. The Court conducted a hearing on the motion on October 18th.[2] At that hearing, the Government finally confirmed that it has completed discovery (apart from disclosures under the Jencks Act, which are due at a later time).

## II.   APPLICABLE LAW

The Speedy Trial Act of 1974 "requires the government to proceed to trial within 70 days of the indictment or the defendant's initial court appearance, whichever occurs later." *United States v. Smart*, 91 F.4th 214, 220 (4th Cir. 2024) (citing 18 U.S.C. § 3161(c)(1)). The Act "contains exceptions that toll this 70-day clock." *Id.* (citing § 3161(h)). But "[i]f this 70-day period elapses and the defendant moves to dismiss the charges on Speedy Trial grounds before trial, then the charges 'shall be dismissed.'" *United States v. Velasquez*, 52 F.4th 133, 136 (4th Cir. 2022) (quoting 18 U.S.C. § 3162(a)(2)).

The Act does not mandate dismissal either with or without prejudice to reprosecution, and it does not indicate a preference or presumption in favor of or against either outcome. *United States v. Taylor*, 487 U.S. 326, 335 n.8 (1988). "The decision to dismiss an indictment with or without prejudice is a matter reserved to the discretion of the Court . . . ." *United States v. Hinch*, 308 F. Supp. 2d 599, 602 (D. Md. 2004) (citing *Taylor*, 487 U.S. at 334–35). "In determining whether to dismiss the case with or without prejudice," § 3162(a) requires the court to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this

---

[2] At the hearing, government counsel conceded that the Indictment is subject to dismissal due to the Speedy Trial Act violations but maintained that dismissal should be without prejudice, which would permit re-indictment. Defense counsel, of course, contended that the Court should dismiss the Indictment with prejudice.

chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). Courts may also consider prejudice to the defendant in deciding whether to dismiss the case with or without prejudice. *See Taylor,* 487 U.S. at 341.

### III.   ANALYSIS

#### A.  Violations of 18 U.S.C. § 3161(c)(1)

There is no dispute that the violations of 18 U.S.C. § 3161(c)(1) in this case require dismissal of the Indictment as to Mr. Brooks, in accordance with § 3162(a)(2). This case involves two distinct periods of time not excluded from the 70-day window for trial provided in § 3161(c)(1), and each of these periods of time exceeds 70 days.

First, the period between Mr. Brooks's initial appearance in this district[3] and the parties' first status report to this Court spanned 247 days—more than three times the 70 days permitted under § 3161(c)(1). It took the Government 83 days after Mr. Brooks's initial appearance to make two productions of discovery. *See* Gov't Opp'n (ECF No. 84) at 4. Thereafter, Mr. Brooks's counsel requested CCTV footage that was missing from the discovery provided. Def. Ex. 2 (ECF No. 83-4). The Government failed to locate and provide the requested material, although it appears to have been in the possession of the Justice Department at the time. *See* Def. Ex. 5 (ECF No. 83-

---

[3] The period between Mr. Brooks's initial appearance in the Eastern District of Virginia and his initial appearance in the District of Maryland is excludable from the Speedy Trial Act clock under 18 U.S.C. § 3161(h)(1)(F).

7). From that point, there was practically no activity in the case until the date the parties filed a court-ordered status report on January 8, 2024.

In its previous Memorandum Order, the Court found that the period before January 8th was not excludable under § 3161(h)(7),[4] and the Government has not argued that any other enumerated exclusion under § 3161(h) applies to this period.

The Court did exclude the period between January 8, 2024, and June 27, 2024, *see* ECF No. 79, and directed the Government to schedule a prompt arraignment for Mr. Brooks, *see* ECF No. 76. The Government finally disclosed the CCTV footage requested by defense counsel on May 22nd, but it failed to schedule an arraignment for Mr. Brooks as directed and failed to move for any further exclusion of time from Speedy Trial Act computations. In its May 22nd discovery cover letter, the Government indicated that more discovery was forthcoming, but it ultimately made no further production of discovery.

There was practically no activity in the case during the 70-day period following June 27, 2024, except for counsel's appearance for a telephonic scheduling conference with the Court on August 20th. That 70-day period expired on September 5, 2024. Counsel for the parties discussed scheduling an arraignment for Mr. Brooks on July 11th, but the arraignment had not been conducted by the date of the scheduling conference. After the conference, the Court again ordered prompt scheduling of an arraignment for Mr. Brooks. *See* ECF No. 81. Mr. Brooks was finally arraigned

---

[4] Section 3161(h)(7) provides that a period of delay "resulting from a continuance granted by [the court]" may toll the 70-day clock "if the judge granted such continuance" based on "his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Such a period of delay is excludable only if "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* This ends-of-justice balancing must be conducted contemporaneously with granting the continuance. *Hart*, 91 F.4th at 740–41. "[N]unc pro tunc or retroactive continuances that are made after the expiration of the time within which the defendant should have been tried for reasons the judge did not consider before lapse of the allowable time are inconsistent with the Act." *Carey*, 746 F.2d at 230.

on September 6th. The defense filed the instant motion to dismiss the following week, on September 13th. It was not until after that date that the Government made its first plea offer to Mr. Brooks, and it was not until the October 18th hearing on Mr. Brooks's motion that the Government confirmed completion of discovery in this case (apart from Jencks Act disclosures).

The Government does not argue that any exception in § 3161(h) warrants exclusion of any part of the 70-day period after June 27, 2024, and the Court does not find that any provision of § 3161(h) applies to this period.

Thus, in total, the 70-day period provided in § 3161(c)(1) elapsed approximately four-and-a-half times over in this case without any trial. Section § 3162(a)(2) requires dismissal.

### B.  Dismissal With or Without Prejudice

The only dispute between the parties is whether dismissal should be with or without prejudice—that is, whether the Government should be permitted to reprosecute Mr. Brooks after the instant Indictment is dismissed. For reasons stated herein, the Court finds that the balance of the relevant factors in this case favor dismissal with prejudice to reprosecution.

#### 1.  The Seriousness of the Offense

The Court first considers the seriousness of the charged offenses. There is no dispute between the parties that the offenses charged in this case are serious enough to weigh against dismissal with prejudice.

Mr. Brooks is charged in three counts of an eleven-count Indictment with conspiracy to distribute and possess with intent to distribute controlled substances, distribution of cocaine base, and possession of a firearm and ammunition by a prohibited person. ECF No. 23. These offenses are Class C felonies. *See* 18 U.S.C. § 3559(a). Penalties for the drug offenses can run up to 20 years of imprisonment, *see* 21 U.S.C. §§ 841(b)(1)(C) & 846, and the firearm offense carries a

maximum 15-year term of imprisonment, *see* 18 U.S.C. § 924(a)(8). The Government proffered during the hearing on October 18, 2024, that Mr. Brooks's drug charges are based on the single controlled purchase of cocaine base (or crack cocaine) described in the complaint affidavit. Even so, distributing and conspiring with another person to distribute this substance to others in the community is plainly serious. Crack cocaine is a highly addictive and dangerous substance responsible for destroying countless lives and generally degrading public health and the quality of life in the community. In addition, illegally possessing firearms as a prohibited person is quite serious, considering the risk of gun violence it poses in the community. *See, e.g.*, *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009) (felon in possession of a firearm and possession with the intent to distribute cocaine base deemed serious offenses).

The Court finds that the seriousness of the offenses charged in the Indictment weigh against dismissal with prejudice.[5]

### 2. The Facts and Circumstances Leading to Dismissal

The Court next considers "the facts and circumstances of the case which led to the dismissal . . . ." 18 U.S.C. § 3162(a)(2). In considering this factor, courts generally "focus 'on the culpability of the delay-producing conduct.'" *United States v. Saltzman*, 984 F.2d 1087, 1093 (10th Cir. 1993) (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988), *cert. denied*, 488 U.S. 925 (1988)). "[T]he duty of protecting [a criminal defendant's] speedy trial rights rests on the Government's shoulders as the charging authority." *United States v. Gabrielian*, Crim. No. SAG-

---

[5] In weighing the seriousness of the offenses, both parties invite this Court to consider matters outside the four corners of the charging documents filed in this case. *See* Def. Mem. (ECF No. 83-1) at 7 (describing Mr. Brooks's conduct on pretrial release and the conduct of government counsel in the prosecution of this case); Gov't Opp'n (ECF No. 84) at 10 (proffering without evidence that Mr. Brooks "fled the state" after the alleged offense conduct). The Court declines to consider these matters in its assessment of the seriousness factor.

11

22-336, 2024 WL 2384148, at *16 (D. Md. May 22, 2024) (citing U.S. Dep't of Just., Just. Manual § 9-90.210-A (2020), and *Dickey v. Florida*, 398 U.S. 30, 38 (1970)); *see also Barker v. Wingo*, 407 U.S. 514 (1972) ("A defendant has no duty to bring himself to trial;[ ] the State has that duty as well as the duty of insuring that the trial is consistent with due process.[ ]") (footnotes omitted).

For the facts and circumstances of a delay "to weigh in favor of dismissal with prejudice, courts have ordinarily required conduct on behalf of the Government beyond mere inadvertence[,]" *United States v. Eltahir*, No. 1:16CR170-1, 2016 WL 5400420, at *2 (M.D.N.C. Sept. 27, 2016), such as "a truly neglectful attitude" or "pattern of neglect" or "bad faith"—"something more than an isolated unwitting violation," *Taylor*, 487 U.S. at 338–39. *See also United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005) ("If the violation is the result of 'intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy.'") (quoting *Saltzman*, 984 F.2d at 1093–94). In *Taylor*, the Supreme Court recognized the length of delay as "a measure of the seriousness of the speedy trial violation" that "in some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty[.]" 487 U.S. at 340.

Here, what may have started off as an isolated and unintentional oversight by the Government has developed into a pattern of neglect and resulted in an unjustifiably long delay. The total amount of non-excluded time that has passed since Mr. Brooks's initial appearance in this district is four-and-a-half times the 70-day period permitted under the Speedy Trial Act.

More importantly, the neglectful conduct that caused this delay has exceeded mere inadvertence. The government attorney assigned to this case was also counsel of record in at least three other criminal cases in this district that were similarly delayed by the start of 2024. *See United*

*States v. Brown*, Crim. No. MJM-21-358, 2024 U.S. Dist. LEXIS 122538, at \*7–9 (D. Md. July 12, 2024) (at least 136 non-excluded days by January 8, 2024); *United States v. Young*, Crim. No. MJM-23-47, 2024 WL 2863603, at \*4 (D. Md. June 6, 2024) (at least 226 non-excluded days by January 8, 2024); *United States v. Berndt*, --- F. Supp. 3d -----, Crim. No. JKB-21-0164, 2024 WL 1886122, at \*2 (D. Md. Apr. 29, 2024) (approximately 300 non-excluded days by February 20, 2024). On May 30, 2024, in the instant case, the Court entered a Memorandum Order denying exclusion of a 177-day period before the January 8th status report while granting an exclusion of time from January 8, 2024, to June 27, 2024. *United States v. Brooks*, Crim. No. MJM-22-60, 2024 WL 2783907, at \*4 (D. Md. May 30, 2024), ECF No. 79 at 7. By July 12, 2024, similar orders had issued in all of the other aforementioned cases, clearly explaining each defendant's rights under the Speedy Trial Act and placing the Government on notice of its obligation to protect those rights. *See supra*. Thereafter, in the instant case, the Government continued to neglect this obligation by failing to schedule a prompt arraignment for Mr. Brooks as directed by the Court,[6] and failing to file any motion for further tolling of the Speedy Trial Act clock in this case.

The foregoing pattern of inattention by the Government weighs against dismissal without prejudice and in favor of barring reprosecution. *See Hastings*, 847 F.2d at 925 ("If delay is occasioned by a pattern of governmental inattention or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue.") (citing *United States v. Salgado Hernandez,* 790 F.2d 1265, 1268 (5th Cir.), *cert. denied*, 479 U.S. 964 (1986)); *Gabrielian*, 2024

---

[6] Government counsel did schedule an arraignment for Mr. Brooks after being ordered to so for the second time. *See* ECF No. 81.

WL 2384148, at *18 ("The Government is supposed to be pressing the case forward expeditiously at all times, not waiting for the Defendants . . . or the Court to take further action.").

In further contribution to the long delays, the Government was unjustifiably slow in its production of discovery in this case, even after the Speedy Trial Act violations became readily apparent. The Government acknowledged at the October 18th hearing that this case is "relatively straightforward." The charges are based largely—perhaps exclusively—on a single transaction that occurred on January 19, 2022. There is no contention that the discovery in this case is particularly voluminous or that the investigation of the case was ongoing after Mr. Brooks's initial appearance. Still, it took the Government 83 days after the initial appearance to make two productions of discovery in the summer of 2023, which, according to the Government, was the same discovery previously produced to co-defendant Willie Small. At that time, the Government advised Mr. Brooks's counsel that it would continue to provide additional discovery, indicating that discovery was not complete. *See* Def. Ex. 1 (ECF No. 83-3). After Mr. Brooks's counsel made multiple requests for case-related CCTV footage, government counsel initially stated that she was not aware of any CCTV footage in the case but that she would "double-check with the case agent and get back to [defense counsel]." Def. Ex. 2 (ECF No. 83-4) at 1. Although the use of CCTV cameras during the investigation was clearly described in the complaint affidavit, government counsel did not follow up with defense counsel as promised and instead fell silent for about four months.

This period of silence ended when a court-ordered status report came due on January 8, 2024, and Mr. Brooks's counsel reached out to government counsel by email. Def. Ex. 3 (ECF No. 83-5) at 3. In a reply email on that date, government counsel stated that she anticipated making an additional production of discovery, unless defense counsel had any requests for "specific documents and/or information that [the Government had] not already produced." *Id.* at 2. In the

status report filed with the Court, the Government stated it anticipated producing additional discovery to defense counsel "in the future." ECF No. 70. In subsequent email correspondence between counsel for the parties, Mr. Brooks's counsel reminded government counsel of their prior requests for CCTV footage and asked that any additional discovery be produced "as soon as possible . . . ." Def. Ex. 4 (ECF No. 83-6) at 1–2. Still, it took the Government another four-and-a-half months to produce the requested CCTV footage in its third (and what turned out to be its final) production of discovery. The cover letter for this final production suggested that additional discovery remained to be produced, *see* Def. Ex. 6 (ECF No. 83-8), but, at the October 18th hearing, government counsel finally confirmed that discovery was complete (excluding Jencks material).

The only explanation offered for the Government's long delay in producing discovery is the fact that the Assistant United States Attorneys initially responsible for the investigation and prosecution are no longer with the U.S. Attorney's Office and presently assigned government counsel had trouble locating the requested CCTV footage. However, government counsel acknowledged at the October 18th hearing that she could have lodged an effective request for the footage more quickly than she did. The Court appreciates this acknowledgement but finds it to be an understatement, given that the Government did not produce the footage until about ten months after it was specifically requested in July 2023, and additional requests were made for the material in August 2023 and January 2024. Moreover, the evidence audit log for the footage shows that Justice Department personnel downloaded the footage on January 27, 2022—about a week after it was captured and some 15 months before Mr. Brooks made his initial appearance.

The Government points out that, during the status conference on May 20, 2024, Mr. Brooks's counsel declined to request a trial date, suggesting that the delays in this case are partially attributable to the defense. Gov't Opp'n (ECF No. 84) at 11. At that time, however, the Government

had not yet completed discovery. When it made a third production of discovery two days later, its cover letter indicated that more discovery remained to be produced. Again, it was not until the October 18th hearing on Mr. Brooks's motion to dismiss that the Government confirmed that discovery was complete.[7]

Although it cited the need to engage in plea negotiations in support of its request to toll the Speedy Trial Act clock, the Government was also unjustifiably delayed in engaging defense counsel in plea discussions. No plea discussions occurred at any point during the seven months following Mr. Brooks's initial appearance. The status report deadline of January 8, 2024, appears to have prompted government counsel to initiate plea discussions, Def. Ex. 3 (ECF 83-5) at 2–3, and government counsel stated in the status report that additional time was necessary to undertake negotiations, ECF No. 70. Defense counsel responded that they would be willing to engage in plea discussions once discovery was complete. Def. Ex. 3 (ECF 83-5) at 1. In its February 20, 2024, motion to exclude time, the Government stated, "The interests of justice would be served by allowing the Parties time to produce and review additional discovery and engage in plea negotiations . . . ." ECF No. 72 at 5. The unjustified delays in discovery appear to have been partially responsible for stalling plea discussions, but not completely. Although it suggested to defense counsel that discovery would continue, *see* Def. Ex. 6 (ECF No. 83-8), the Government

---

[7] The Government was also less-than-diligent in its litigation of the only motion to exclude time that it filed in this case. In the January 8th status report, the Government stated its plan to file a motion seeking exclusion of time through March 9th and suggested that another status report be filed by that date. ECF No. 70. But it took the Government another six weeks to file the promised motion. ECF No. 72. Mr. Brooks filed a timely response in opposition to the motion. ECF No. 73. The Government failed to file a timely reply and failed to file the follow-up status report it had committed to file by March 9th. *See* ECF No. 70. Counsel for Mr. Brooks filed their own status report on March 11th. ECF No. 74. Government counsel remained silent until the telephonic status conference on May 20th. During the status conference, government counsel requested an opportunity to file an untimely reply, to which defense counsel consented. The Government filed the reply on May 28th. ECF No. 77. As explained *supra*, the Court granted in part and denied in part the Government's motion by Memorandum Order dated May 30th. ECF No. 79.

completed discovery on May 22, 2024 (excluding Jencks material). Under the belief that more discovery was forthcoming "on a rolling basis," *id.*, defense counsel was not in a position to restart plea discussions with government counsel. Government counsel, on the other hand, *was* in that position but did not present terms of a potential plea offer until more than three months later—the date of Mr. Brooks's long-delayed arraignment on September 6th. Gov't Opp'n (ECF No. 84) at 13. A formal plea offer was not made until after Mr. Brooks moved to dismiss the Indictment for Speedy Trial Act violations. *Id.*

In sum, the Court finds the Government's conduct to reflect a "a truly neglectful attitude," *Taylor*, 487 U.S. at 338, which has resulted in lengthy delays in the progress of this case and amounted to a serious violation of § 3161(c)(1). The facts and circumstances leading to the dismissal of this case weigh heavily in favor of dismissal with prejudice.

### 3. The Impact of a Reprosecution on the Administration of the Speedy Trial Act and the Administration of Justice, and Prejudice to the Defendant

The Court finally considers "the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). In applying this factor, courts generally consider the need to deter the Government from future Speedy Trial Act violations. *See United States v. Bert*, 814 F.3d 70, 83 (2d Cir. 2016); *Eltahir*, 2016 WL 5400420, at *3. While it is true that "dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays[,]" the Speedy Trial Act "does not require dismissal with prejudice for every violation." *Taylor*, 487 U.S. at 342.

> Dismissal without prejudice is not a toothless sanction: it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds. . . . If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the

> consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution.

*Id.*

Courts also consider any prejudice to the defendant, either as part of the third statutory factor or as a separate factor. *See United States v. Jones*, 887 F.2d 492, 495 (4th Cir. 1989) (considering prejudice to the defendant as part of the third factor); *Gabrielian*, 2024 WL 2384148, at *20–21 (considering prejudice to the defendants as a separate factor). "In the related context of a constitutional speedy trial analysis . . . , the Supreme Court has identified three defense interests bearing on the question of whether a defendant has suffered prejudice: 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the . . . defense will be impaired.'" *United States v. Gaines*, Crim. No. SAG-22-0125, 2024 WL 3234007, at *7 (D. Md. June 28, 2024) (quoting *Doggett v. United States*, 505 U.S. 647, 654 (1992)).

Although the significant delay in this case supports a presumption of prejudice to Mr. Brooks, see *Taylor*, 487 U.S. at 340, the Court does not find that Mr. Brooks has suffered any actual prejudice by the delays in this case or would be actually prejudiced by reprosecution. He does not contend that his defense has been impaired in any way or would be impaired if reprosecuted after dismissal. He argues that the delays have placed him "in limbo" and claims that he "cannot plan for the future in any meaningful sense." Def. Mem. (ECF No. 83-1) at 11. These matters are generally worthy of consideration but do not weigh strongly in favor of dismissal with prejudice. Mr. Brooks offers no explanation as to how the pendency of his case has disrupted his future plans or affected him in any tangible way that is greater than anyone else pending trial on criminal charges. He has not been subject to pretrial incarceration. On the date of his initial appearance, he was released from custody on conditions of supervision that have allowed him to

maintain employment and fulfill family obligations. *See* ECF No. 65 (release order); Def. Mem. (ECF No. 83-1) at 11.

Notwithstanding the lack of actual prejudice to Mr. Brooks, the Court finds that the Government's conduct in this case calls for a greater sanction than dismissal without prejudice. The Government's dilatory and neglectful conduct in this case (as outlined in Parts I and III.B.2, *supra*) resulted in more than eight months of unjustified delay in this case. A substantial portion of this delay occurred *after* government counsel was on clear notice that her neglect had resulted in a Speedy Trial Act violation. Specifically, on May 30, 2024, the Court entered a Memorandum Order finding that the Speedy Trial Act had been violated in this case before January 8th. ECF No. 79. Similar orders issued in no less than three other cases handled by government counsel,[8] including orders of dismissal without prejudice issued in two of the cases.[9] These orders did not deter the Government from continuing its pattern of neglect in the instant case during the period after June 27th. Against this backdrop, the Court cannot rely upon dismissal without prejudice in this case to "induce salutary changes" in the Government's procedures as necessary to avoid pretrial delays, as required by the Speedy Trial Act. *Taylor*, 487 U.S. at 342.

Dismissal without prejudice and the inconvenience of seeking a new indictment would not provide adequate deterrence and would be a toothless sanction in the circumstances of this case. The Court understands the Government's trial evidence to consist primarily of testimony from federal law enforcement agents and recordings of the controlled purchase on January 19, 2022. Obtaining a new indictment with the same charges would not be barred by the statute of limitations.

---

[8] *See* ECF No. 70, 2024 WL 2783907 (May 30, 2024); *Brown*, 2024 U.S. Dist. LEXIS 122538 (July 12, 2024); *Young*, 2024 WL 2863603 (June 6, 2024); *Berndt*, --- F. Supp. 3d -----, 2024 WL 1886122 (Apr. 29, 2024).

[9] *See Brown*, 2024 U.S. Dist. LEXIS 122538; *Berndt*, --- F. Supp. 3d -----, 2024 WL 1886122.

Thus, dismissal without prejudice would not hamper the Government's ability to seek and obtain a new indictment or present its case at a subsequent trial. *See Gabrielian*, 2024 WL 2384148, at *19 (finding "no meaningful deterrent effect" in dismissal without prejudice where the Government could "refile its charges (which are not time-barred)" and its "ability to meet its burden of proof will not be impacted by the delay").

In sum, the Court is left with no confidence that dismissal of the Indictment in this case without prejudice would deter future Speedy Trial Act violations, whether against Mr. Brooks or against other defendants in future cases. "A pattern of disregard for the responsibility to bring criminal cases to trial expeditiously has the potential for nullifying the requirements of the Act, for if the government suffers only dismissals without prejudice on motion of the defendant, it in effect gains successive 70–day periods in which to bring the defendant to trial." *United States v. Giambrone*, 920 F.2d 176, 180 (2d Cir. 1990). Here, the Court finds that permitting reprosecution in the foregoing circumstances would undermine the fair administration of the Act.

The Government emphasizes that it did not seek or obtain any tactical advantage from the lengthy delay in this case, and there is no evidence of any bad faith or improper motive by the Government or ill will toward Mr. Brooks personally. Gov't Opp'n (ECF No. 84) at 10–13. This Court is not persuaded that such evidence is necessary to justify dismissal with prejudice. If that were so, then the Government could serially ignore its obligation to protect defendants' rights under the Speedy Trial Act and only risk the inconvenience of seeking a new indictment, so long as its delays do not go beyond the statute of limitations, result in an identifiable tactical advantage, or rise to the level of a constitutional violation. As the U.S. Court of Appeals for the Second Circuit persuasively reasoned in *Bert*:

> The Act's purpose of expeditiously bringing criminal cases to trial would not be served by assuring those charged with this

responsibility that they need not fear the more severe sanction—no matter how egregious the violation—as long as they refrain from intentional efforts to circumvent the Act. The burden on courts and prosecutors of reindicting a defendant is, at a minimum, not substantially more onerous than the routine business of ensuring vigilant compliance. Accordingly, "the knowledge that a violation could potentially result in [dismissal with prejudice] gives the prosecution a powerful incentive to be careful about compliance," . . . an incentive that would be absent under a regime requiring a showing of bad faith.

814 F.3d at 83 (quoting *Zedner v. United States*, 547 U.S. 489, 499 (2006)). Moreover, "[a] rule that limited the sanction of dismissal with prejudice exclusively to cases involving bad faith would contravene the well-established principle that '[t]he Speedy Trial Act does not indicate a preference as between dismissals with and dismissals without prejudice.'" *Id.* at 80 (quoting *Giambrone,* 920 F.2d at 180).

The Government cites the Fourth Circuit's decision in *Jones*, 887 F.2d at 495, for the proposition that dismissal without prejudice is "appropriate where the government's violation was not the result of bad faith or an attempt to gain a tactical advantage." Gov't Opp'n (ECF No. 84) at 15. In *Jones*, the defendant appealed the district court's order of dismissal without prejudice under the Speedy Trial Act, arguing that the court failed to provide an adequate explanation of its assessment of each of the factors listed in § 3142(a)(2). *Jones*, 887 F.2d at 494. While acknowledging that the district court should have provided an analysis of the statutory factors, the Fourth Circuit held that the district court's error was harmless because the record was sufficient to show that the district court did not abuse its discretion. *Id.* at 495. Specifically, the record showed that the offenses at issue were "very serious," the trial was delayed by only 26 days beyond the 70-day period permitted under the statute, and the circumstances leading up to the delay showed it to be inadvertent. *Id.* Regarding the impact of reprosecution on the administration of justice and

the Speedy Trial Act, the Fourth Circuit found "no evidence that a delay in the trial date was for the government to obtain a tactical advantage, that the delay was purposeful or that the appellant was prejudiced by the delay." *Id.* Unlike the instant case, *Jones* involved a relatively brief delay not attributable to any mishandling or neglect by the prosecution that warranted the sanction of dismissal with prejudice.

In contrast, the Government's conduct in the instant case reflects a pattern of neglect and inactivity that resulted in significant delays. The purposes of the Speedy Trial Act are to avoid such unjustified delays and to protect criminal defendants' and the general public's interest in the prompt administration of justice. To permit reprosecution of this case would undermine those purposes.

Balancing the lack of prejudice to Mr. Brooks against the need to deter practices that contributed to significant unjustified delay in this case, the Court finds the third factor in § 3142(a)(2) to weigh in favor of dismissal with prejudice.

## IV.    CONCLUSION

In sum, the balance of the factors listed in § 3142(a)(2) weigh in favor of dismissal with prejudice to reprosecution. The first factor—seriousness of the offenses—weighs against dismissal with prejudice because the drug and gun offenses charged in the matter are indeed serious. At the same time, the Court notes that these charges are based on a single transaction and not a protracted investigation of a multi-level or long-standing drug trafficking conspiracy or any incident of gun violence. The second factor—the facts and circumstances leading to the delay—weighs heavily in favor of dismissal with prejudice, for reasons explained *supra*. As to the third factor, the Court has considered both prejudice to the defendant and the need to deter governmental practices that impede the fair administration of the Speedy Trial Act. The relevant considerations cut in opposite directions but, on balance, favor dismissal with prejudice. Accordingly, Mr. Brooks's Motion to

Dismiss for Speedy Trial Act Violation (ECF No. 83) will be granted, and the Indictment will be dismissed with prejudice.

A separate Order will follow.

10/24/24
_____
Date

_____
Matthew J. Maddox
United States District Judge